## IN THE UNTIED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

FLOYD EARL RAYNER, III,　　　　）
　　　　　　　　　　　　　　　　）
　　　　　Petitioner,　　　　　　）　　　NO.　3:06-1187
　　　　　　　　　　　　　　　　）　　　JUDGE HAYNES
　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　）
DAVIS MILLS, Warden,　　　　　　）
　　　　　　　　　　　　　　　　）
　　　　　Respondent.　　　　　　）

## MEMORANDUM

Petitioner, Floyd Earl Rayner, III, a state prisoner, filed this action[1] under 28 U.S.C. §

2254, seeking to set aside his convictions for rape of a child and aggravated sexual battery for

which he received an effective total of 51 years.  Petitioner's original claims were for violations

of his Sixth, Eighth and Fourteenth Amendment rights under the United States Constitution.

After a review of the petition, the Court appointed the Federal Public Defender to represent

Petitioner.  (Docket Entry No. 16).  In his amended petition, Petitioner's specific claims are: (1)

that the State violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose that the

victim had a positive test for a sexual condition; (2) that Petitioner's trial counsel was ineffective

for his failings to request a psychological examination of the victim, to obtain an expert

evaluation of Petitioner's mental state, to investigate a potential perpetrator, and to call certain

witnesses at trial; (3) that Petitioner's appellate counsel failed to disclose his wife's affidavit that

the State advised her to leave the State prior to Petitioner's trial; (4) that the State's evidence was

insufficient to support his convictions; (5) that he is actually innocent of the charges; (6) that the

---

[1]This action was originally filed in the Eastern District of Tennessee, but was transferred
to this district.  (Docket Entry No. 4).

trial court failed to apply mitigating factors in imposing consecutive sentence; and (7) Petitioner's sentence was unlawfully enhanced by facts that were not found by the jury. The amended petition reiterates the claims in the pro se petition, but fails to provide any analysis or precedent to evaluate those claims.[2]

Respondent contends that except for his ineffective assistance of counsel claims, Petitioner's other claims were not presented as federal law claims in the state court or were not presented to the state courts. Thus, Respondent asserts that the procedural default doctrine bars those claims.

## A. Procedural History

A jury convicted Petitioner on five counts of child rape and five counts of aggravated sexual battery in January 2001. Petitioner was sentenced to 42 years on two child rape counts and nine (9) years on the aggravated battery count with a six years concurrent sentence on the remaining counts. On direct appeal, Petitioner presented two claims: (1) that the trial court breached its duty as the thirteenth juror; and (2) that the trial court failed to apply mitigating factors to Petitioner's sentence. State v. Rayner, 2002 WL 1336654 (Tenn. Crim. App. June 19, 2002). The Tennessee Court of Criminal Appeals affirmed the convictions and concluded that Petitioner waived the sentencing issues by failing to designate the pre-sentence report for his appeal. The Tennessee Supreme Court denied his application for review. Id.

---

[2]The Federal Rules of Civil Procedure can apply in a habeas proceeding. Mayle v. Felix, 545 U.S. 644, 649 (2005); Rule 6(a), Rules Governing Section 2254 Cases. Under Fed. R. Civ. P. 15 (a), the filing of an amended complaint supercedes the prior complaint. Clark v. Tarrant County, 798 F.2d 736, 740-41 (5th Cir. 1986). Thus, the Court deems the amended petition to supercede the pro se petition. In a footnote, the amended petition incorporates by reference the claims in the pro se petition, but none of those claims are supported by analysis and precedents. Thus, the Court deems those claims waived and they are not considered.

Petitioner then filed his post-conviction petition with claims that his trial counsel was ineffective for failing: to investigate the case properly; to call two co-workers as witnesses; to pursue a potential defense that Petitioner did not have trichomonas, a sexually transmitted disease that the victim had; to hire an investigator; and to perfect an appeal with a complete record. After an evidentiary hearing, the trial court denied the petition and the Tennessee Court of Criminal Appeals affirmed. Rayner v. State, 2006 WL 2000701 (Tenn. Crim. App. July 19, 2006). The Tennessee Supreme Court denied his application for review. Id.

## B. Review of the State Record

### 1. Findings of Fact

On direct appeal, the Tennessee Court of Criminal Appeals stated its findings[3] of the facts underlying Petitioner's convictions.

> In the light most favorable to the state, the evidence introduced at trial showed that the victim is the sole child of the defendant and his wife. The victim is mildly mentally retarded. At the time the offenses commenced, the victim was in the fifth grade, and she was enrolled in resource and life skills classes at school. Academically, she performed at a kindergarten level. She did not know the alphabet, numbers, days of the week, or months of the year. During part of her fifth grade year, she and her parents lived in a car. Later in that school year, they moved into a house on Louis Street in Nashville. During the fifth grade, the victim came to school in filthy clothes and "smelling really bad." Her teacher testified that the victim's body was unclean and beset with hives or scabies sores, and her hair was infested with lice.
>
> By the time M.R. was in the seventh grade, she and her parents had moved to a room at the Music City Motor Inn, an enterprise that catered to a "transient" clientele. She transferred to a different school in Nashville. Although she improved her academic functioning to a first grade level, she remained very limited scholastically and socially, and she continued to come to school unclean

---

[3]State appellate court opinion findings can constitute factual findings in a habeas action . Sumner v. Mata, 449 U.S. 539, 546-47 (1981) and have a statutory presumption of correctness 28 U.S.C. § 2254(d).

3

and malodorous.

In December 1999, the victim told a family friend that she had been sexually abused. An investigation followed. She was initially removed from her parents' custody because of the filthy living conditions in the motel room; however, the present charges were eventually lodged against the defendant. At the time of trial, the victim's eighth-grade teacher had officially assumed the role of foster parent of the victim.

The victim testified that when her family lived at the location on Louis Street, the defendant "was touching me like over the private parts, like the chest, the front part and behind parts." It happened "[m]ore than one time." She recalled that she was in the fifth grade the first time it happened. On this occasion, she was playing with her "Barbies and ... toys" when the defendant came into the room and asked her to disrobe and lie on the bed. She complied, lying on her back. She testified that he touched her chest by putting his hand on her and then "his mouth on the middle part," which he "squeeze[d]" with his mouth. Then, he touched her "front private part," opening "the middle of it and then he would like lick it." She felt his mouth on the "inside" of her private part. The defendant "would open the vaseline and he would take ... four fingers and dip it out and put it all over his private part and put his front part in my behind," although it is unclear from the victim's testimony whether this sexual activity occurred as a part of or on the same day as the "first time it happened." The victim testified that she felt pain when the defendant anally penetrated her and told the defendant to stop.

Without describing a date or related event, the victim then testified that the defendant "would take his private part and like put my hands on it and then he would like open my mouth all the way open and then he would put his private part inside of my mouth." She testified that his "private part" emitted "clear white stuff."

Describing another occasion without relating it to a specific event or date, she testified that the defendant "would like put his hands on my chest and put his mouth on it and ... he would ... open [my private part] and put his tongue on [it] and then he would put his private part in my behind." She testified that this happened more than one time but denied that he ever tried to insert his penis into her vagina. She testified that these events occurred at the Louis Street address when her mother was at work.

The victim then discussed events that occurred when she was in the seventh grade and her family was living at the Music City Motor Inn. She testified that the defendant gave her "bad touch[es]" more than one time. She related that the first time he touched her chest with his hand and mouth and "would like open my

4

private parts, and then he would put his tongue on it." Again, she felt the defendant's mouth "on the inside" of her private part. Then, he "would just put his private part inside my behind." Finally, the victim testified that he would put his private part into her mouth and "like go up and down."

A medical examination of the victim revealed no anomalies in her anal area, but the medical expert opined that the muscular tissue surrounding the anus does not typically show signs of penetration trauma. The vaginal examination was inconclusive as to penetrative activity but revealed that the victim was afflicted with trichomonas, a sexually transmitted disease.

Once, the victim was sexually fondled at school by a male student.

The defendant testified that he worked many long hours at minimum wages to support his family and blamed his wife for not assuring the cleanliness of their home and the good hygiene of the victim. He denied that he ever engaged in any sexual activity with the victim.

Rayner, 2002 WL 1336654 at **1-3. The state appellate courts' other factual findings are set forth in the analyses of Petitioner's specific claims.

## C. The Federal Habeas Hearing

After a review of the file, the Court set an evidentiary hearing as to whether the Petitioner's claims of ineffective assistance of counsel would establish cause and prejudice to excuse his procedural defaults as well as his claims of actual innocence. After conference with counsel, Petitioner abandoned his actual innocence contention and the hearing was limited to the issue of whether Petitioner's trial counsel's performance was ineffective and prejudicial so as to excuse Petitioner's procedural defaults.

At that hearing, Petitioner testified that he met with his counsel one or two times, and that he had requested the presence of his wife and Lee Ann Ramsey, another female friend, at his trial. According to Petitioner, after the trial, he learned about a Mr. Nelson, whom he described as the perpretrator, because Nelson had once been observed standing nude in front of his

5

daughter. Petitioner also testified that after he learned that he may be suspected of sexual misconduct with his daughter, he went to be tested for sexually transmitted diseases that were negative.

Petitioner's trial counsel, Edward Ryan, a former police officer and former state prosecutor testified that as defense counsel, he had a total of 14 or more visits with Petitioner, including court proceedings and approximately equal number of jail visits. As part of his investigation, Ryan sought to locate Nielson or Nelson whom Petitioner identified as the perpetrator. Ryan was unable to ascertain the exact name, but went to the motel where Petitioner identified Nielson or Nelson as a security guard. At the hotel, no one could provide Ryan with any information or knowledge about Mr. Nielson or Nelson. Ryan also explored the existence of Nielson or Nelson through his contacts with the police department, but was unsuccessful.

As to the victim's mother and Ramsey, Ryan did not recall any favorable testimony that either of them would provide at trial. The Court notes that the records subpoenaed by Petitioner reveal that the victim disclosed Petitioner's various sexual assaults to her mother and when the victim's mother confronted him, Petitioner in one instance denied any such conduct and in another instance, Petitioner stated that he may have done so while he was drunk. The other evidence reflects that Ramsey, Petitioner's friend was present when the victim reported Petitioner's various sexual assaults. There is not any proof from Petitioner or the victim's mother or Ramsey that would have been beneficial to Petitioner's defense.

Petitioner presented the testimony of Brad Beasley, an official with the Metropolitan Nashville health clinic that tests citizens, upon their request, for sexually transmitted diseases. According to Beasely, males are not tested for trichomonas, the victim's sexual condition,

6

although women can be tested for this disease. Beasley explained that in men, this condition cures itself over time, and that his agency does not test males for this condition.

### D. Conclusions of Law

Petitioner's habeas petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997). Under the AEDPA, federal courts may not grant habeas relief for claims adjudicated on their merits in a state court proceeding, unless that state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding:

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000), the Supreme Court stated that a state court judgment is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." The Supreme Court interpreted the language "clearly established Federal law, as determined by the Supreme Court of the United States" as referring to "holdings, as opposed to dicta" of its decisions "as of the time of the relevant state-court decision." <u>Id.</u> at 412. In <u>Bell v. Cone</u>, 535 U.S 685, 693 (2002), the Court reiterated that AEDPA modified a federal court's role in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under the law."

7

Under the "unreasonable application" clause, a state court judgment results in an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. The Supreme Court explained that a state court's application of clearly established federal law must be "objectively unreasonable," and a federal habeas court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A state court's application of federal law is unreasonable and habeas relief may be granted if the "state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)).

In reaching this decision, the Supreme Court reiterated that the claims were to be decided on the record before the state court:

> In this and related contexts we have made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Yarborough v. Gentry, 540 U.S. 1, 6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam) 124 S.Ct., at 4 (denying relief where state court's application of federal law was "supported by the record"); Miller-El v. Cockrell, 537 U.S. 322, 348, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Holland v. Jackson, 542 U.S. 649, 652 (2004) (emphasis added). The district court also "must presume that all determinations of factual issues made by the state court are correct unless the

Case 3:06-cv-01187  Document 90  Filed 03/01/10  Page 8 of 25 PageID #: 826

Defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 738 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). This presumption includes credibility findings of the state courts. Skaggs v. Parker, 235 F.3d 261, 266 (6th Cir. 2001).

### 1. Exhausted Claims

#### a. Ineffective Assistance of Counsel

Petitioner's claims about his trial counsel's ineffectiveness in the state courts were: "the petitioner complained that counsel failed to properly investigate his case, to call all pertinent witnesses, to follow up on a potential defense, to hire an investigator, and to properly perfect the appeal of this case." Rayner, 2006 WL 2000701 at *2. On these claims, the State appellate court found the following facts on Petitioner's post-conviction appeal:

> At the post-conviction hearing, the petitioner's trial counsel testified that he was appointed in January or February 2000, and the case was tried in January 2001. In the year he worked on the case, trial counsel had numerous meetings with the petitioner. During those meetings, counsel reviewed with the petitioner the discovery documents, the State's evidence, and potential trial strategy. Counsel stated that he wanted to keep the petitioner informed.

> Counsel recalled that the victim had some developmental problems. He did not request an individual competency evaluation of the victim because he did not believe it was warranted.

> Counsel noted that he looked into a possible medical defense for the petitioner. He explained that the victim was diagnosed with trichomonas, a sexually transmitted disease. The petitioner voluntarily submitted to testing to determine if he was the source of the disease. The results came back negative for the presence of sexually transmitted diseases. Counsel thought the results were a "significant" piece of evidence. However, he later learned that the petitioner had not been tested specifically for trichomonas. By the time counsel learned this information, it was too late to conduct another test to determine if the petitioner could be the source of the victim's disease.

> Counsel stated that he thoroughly researched trichomonas in preparation for trial. He read several articles and spoke with doctors. Counsel did not hire an expert on

9

trichomonas. Counsel believed that the results of the petitioner's sexually transmitted disease tests were inconclusive and were "nothing to bring to trial"; however, "[i]t was approached during the trial through the State's witnesses about her having that and no comparison that [the petitioner] was carrying that same disease." Additionally, on cross-examination counsel pointed out that sexual contact was not the only way that the trichomonas could have been transmitted. Counsel recalled that the defense he pursued at trial was that the victim fabricated the abuse to get out of the petitioner's household.

Counsel asserted that he learned of witnesses through conversations with the petitioner and through discovery. He spoke with all of the witnesses he could locate. However, he was unable to recall several potential witnesses the petitioner alleges should have been called. Counsel stated that he did not recall the petitioner mentioning David Nealson or Leanne Ramsey as potential witnesses. He spoke with the petitioner's wife about being a witness, but she left the jurisdiction prior to trial. Additionally, counsel recalled that a security guard at the Music City Motor Inn was a potential witness, but he was unable to locate that witness. Counsel stated that "[a]nything that was in through discovery or [the petitioner] or his wife at the time that had any relevance to somebody other than [the petitioner] being the perpetrator was investigated."

Counsel acknowledged that he never hired an investigator. He explained, "A lot of what I was doing, I did on my own. But I didn't have enough to go forward with, as far as investigator, anywhere to lead them to that." Counsel stated that he went to the scene himself and investigated; however, he was unable to find "solid names, date of births or anything of the people we were looking for."

Counsel acknowledged that he represented the petitioner on appeal, raising issues of sufficiency and sentencing. Counsel stated that he thought the "entire record" went up on appeal, but he did not check out the record to ensure that it was complete. Counsel conceded that this court did not address the sentencing issue because the presentence report was not included in the appellate record.

The petitioner testified at the post-conviction hearing that he could recall only two meetings with counsel during the course of his representation. The petitioner admitted that counsel gave him copies of all discovery. The petitioner told counsel that when his family lived at "the Bottoms," David Nealson lived beside them. When they moved to the Music City Motor Inn, Nealson followed them and moved in beside them. Additionally, Nealson worked with the petitioner at an Aztec convenience store. The petitioner told counsel to investigate Nealson as the perpetrator. He suspected Nealson because "I was told that he got my daughter walked in on him two or three times standing there naked." The petitioner stated that he thought Nealson was in Austin, Texas, and he mentioned that Nealson had

10

been on America's Most Wanted for child pornography and sodomy.

The petitioner said that he told counsel to call Leanne Ramsey to testify on his behalf. Ramsey worked at the Aztec with him and Nealson. He thought that she would have "insight" into the case and would be able to testify that the victim was "spoiled." The petitioner said that Ramsey would testify that the victim "would say things and do things if she didn't get what she wanted." The petitioner thought that Ramsey was testifying at his trial; however, "when it come time she wasn't there." He believed that counsel was going to ask for a recess or continuance to procure Ramsey's presence, but counsel merely continued with the trial.

The petitioner testified that he was tested for sexually transmitted diseases. He thought that he had been tested for trichomonas "even though they say I wasn't." He said that he did not ask counsel to hire an expert on sexually transmitted diseases. Regardless, the petitioner "figured he would, you know, I was trusting him to do it."

The petitioner stated that counsel handled his appeal. Counsel did not ask the petitioner what issues he wanted to appeal. The petitioner discovered that this court would not address his sentencing issue because counsel had failed to include the presentence report in the appellate record.

\* \* \*

The post-conviction court implicitly accredited counsel's testimony that he investigated all possible witnesses for trial and searched the scene for leads. We can find no reason to dispute the post-conviction court's finding. Additionally, although the petitioner complained about counsel's failure to call Nealson and Ramsey as witnesses at trial, he did not produce either witness to testify at his post-conviction hearing. . . . We may not speculate on what benefit these witnesses might have offered to the petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. Accordingly, the petitioner has failed to demonstrate prejudice in this regard.

2006 WL 2000701 at \*\*2, 3, 4, 5 (emphasis added and citation omitted).

To establish ineffective assistance of counsel, Petitioner must demonstrate that under the totality of the circumstances, his trial counsel performed deficiently and that counsel's performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 695 (1984). As the Supreme Court has explained:

11

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Under Strickland, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. As to the duty to investigate:

These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decision, just as it may be critical to a proper assessment of counsel's other litigation decisions.

12

Id. at 690-91.

In any event, Strickland directs that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 689, 691. As the Supreme Court noted, "[c]ounsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." Id. at 691 (emphasis added). Counsel's failure "to conduct constitutionally adequate pretrial investigation into potential evidence" can "hamper[] [their] ability to make strategic choices." Harries v. Bell, 417 F.3d 631, 639 (6th Cir. 2005). A court must examine not only to the individual errors of counsel, but must also view the effect of the errors cumulatively. See Draper v. Adams, 215 F.3d 1325, 2000 WL 712376, at *3 (6th Cir. May 23, 2000).

To establish prejudice due to his counsel's errors or omissions, Petitioner must establish a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Williams, 529 U.S. at 390-91. In a word, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." Strickland, 466 U.S. at 694.

On his trial counsel's failure to pursue testing of Petitioner's daughter for sexually transmitted diseases, the Tennessee Court of Criminal Appeals concluded that the core facts were

13

before the jury and that counsel's decision regarding testing of Petitioner was a tactical decision of counsel:

> The post-conviction court found that the jury was aware that the victim was suffering from trichomonas, but the petitioner was not. The court noted that counsel investigated the defense and determined that "it would not be a viable defense based on the fact that the petitioner could have been an active carrier at the time of the offense despite not being infected at the time he was tested." At the post-conviction hearing, counsel testified that because the petitioner had not been specifically tested for trichomonas, the petitioner was not exonerated as the perpetrator. Therefore, we cannot fault counsel for choosing a different tactic for defense.

2006 WL 2000701 at *5.

As to Petitioner's failure to hire an investigator claim that is related to the victim's sexually transmitted disease claim, the state appellate court stated:

> Counsel testified at the post-conviction hearing that he thoroughly researched trichomonas and determined that because of the time that had passed, further testing of the petitioner would not ascertain whether the petitioner was carrying the disease. Additionally, counsel stated that he visited the scene and interviewed or attempted to interview all known witnesses. The petitioner does not explain what further investigation performed by an investigator would have revealed. Therefore, he has not proven ineffective assistance of counsel in this regard.

2006 WL 2000701 at *6 (emphasis added).

As to his appellate counsel's failure to include the pre-sentence report in the appellate record, thereby precluding appellate review of that issue, the State appellate court granted Petitioner's motion to file the pre-sentence report as a supplement to the record on February 27, 2006. (Docket Entry No. 14, Addendum No. 7). The Tennessee appellate court took judicial notice of that report on Petitioner's appeal and ruled as follows:

> Finally, the petitioner complains that counsel failed to include the presentence report with the appellate record, thus precluding this court from reviewing the petitioner's sentence on direct appeal. This is an issue that is of growing concern

14

to this court. Our law is clear that the appealing party bears the burden of ensuring that a fair, accurate, and complete record is before this court for review. See Tenn. R. App. P. 24(b); see also Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). However, too often issues come before this court that we are unable to review because of an inadequate record. This is a problem easily remedied by the parties reviewing the record that has been submitted on appeal. We conclude that counsel was deficient in this regard.

To be entitled to post-conviction relief, the petitioner must also prove that he was prejudiced by this error. The post-conviction court found that substantial evidence existed to support the sentences imposed in this case. We are unable to review this finding because the petitioner has failed to include a transcript of the trial and sentencing hearing with the record on appeal. See Juan Alfonzo Hill v. State, No. E2004-02915-CCA-R3-PC, 2005 WL 2276422, at *7 (Tenn. Crim. App. at Knoxville, Sept. 19, 2005). Moreover, the petitioner did not ask the post-conviction court or this court to take judicial notice of the direct appeal record. As the State pointed out in its appellate brief, "[p]ost-conviction counsel here has committed the same mistake that trial counsel committed on direct appeal-he did not include all parts of the record necessary for this Court to review sentencing."

We note that regardless of the petitioner's error, this court may take judicial notice of the direct appeal record. See State ex rel. Wilkerson v. Bomar, 213 Tenn. 499, 376 S.W.2d 451, 453 (Tenn. 1964). However, we choose not to do so in this case because the petitioner failed to argue in either the lower court or this court how he was prejudiced by counsel's failure to ensure the presentence report was included in the direct appeal record. Prejudice will not simply be presumed by this failure; it must be specifically alleged and proven. See John R. Black v. State, No. M2004-01785-CCA-R3-PC, 2005 WL 1930795, at *4 (Tenn. Crim. App. at Nashville, Aug. 11, 2005), perm. to appeal denied, (Tenn. 2005); Donald R. West v. State, No. 03C01-9407-CR-00253, 1995 WL 241548, at *4 (Tenn. Crim. App. at Knoxville, Apr. 26, 1995). It is not the job of this court to ferret out potential problems, thereby serving the function of both court and counsel. The petitioner is not entitled to relief on this issue.

2006 WL 2000701 at *6 (emphasis added). Under Strickland, the decision to raise an issue or claim on appeal is a strategic decision of counsel and in any event, even in the post-conviction process, Petitioner did not establish prejudice for this omission.

In sum, as to Petitioner's ineffective assistance of counsel claims, the Tennessee Court of

15

Criminal Appeals applied <u>Strickland</u> and accurately summarized the facts adduced at the post-conviction hearing. For his trial counsel's failures to have Petitioner tested; to hire an investigator; to call witnesses; and to file the presentence report, Petitioner has not established prejudice for those claims. Thus, the State appellate court could reasonably conclude that these claims were without merit.

### b. Defaulted Claims

Respondent contends that Petitioner did not present his claim about the sufficiency of the evidence to the state court as a federal law claim and that his claims that trial counsel's failed to secure a medical report to testify about trichomonas at trial and to call Petitioner's wife were not presented to the state courts. In addition, Respondent argues that Petitioner's generic challenge to the trial court's sentencing decision fails to implicate federal constitutional principles, were state law claims, and <u>Blakely v. Washington</u>, 542 U.S 296 (2004) cannot be applied retroactively in an action under 28 U.S.C. § 2254, citing <u>Humpress v. United States</u>, 398 F.3d 855 (6th Cir. 2005).

### 1. Sufficiency of the Evidence

In Petitioner's direct appeal, the Tennessee Court of Criminal Appeals addressed Petitioner's claim that the trial court breached its duty as the thirteenth juror because of the lack of direct proof that Petitioner sexually abused his daughter. Citing Tenn. R. Crim. P. 33(f) and relevant decisional authority, the Tennessee Court of Criminal Appeals concluded that the trial judge in fact exercised his role as thirteenth juror noting that:

> In the present case, the trial judge not only overruled the motion for new trial, he said, "I'm satisfied with the jury's verdict in this matter. I will respectfully overrule [the] motion" Thus, based upon these statements, the trial court

16

discharged its duties pursuant to Rule 33(f).

2002 WL 1336654 at **3-4.

This claim about the trial judge as the thirteenth juror arises under and is controlled by state law. State courts' interpretation of state law binds federal court in habeas corpus case. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). "[W]e reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions." Id. at 67-68.[4]

Petitioner must exhaust all claims in state court before asserting those claims in a federal habeas action. Wilwording v. Swenson, 404 U.S. 249, 250 (1971). A habeas petitioner must present claims to the state courts as federal constitutional issues rather than state law issues. Picard v. Connor, 404 U.S. 270, 275 (1971). The facts and federal legal theory raised in a petition for the federal writ of habeas corpus must have been "fairly presented" to the state courts. Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam) (citing Picard and Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam) ("It is not enough that all the facts necessary to

---

[4]To the extent this claim also challenges the sufficiency of the State's proof, that is a claim in the amended petition. Petitioner contends that (1) the evidence did not establish that he had transmitted trichomonas to the victim, (2) the victim was an unreliable witness, and (3) the record contained testimony supporting only three incidents of child rape. As to the sufficiency of the evidence claim under insufficient evidence, Jackson v. Virginia, 443 U.S. 307 (1979), contrary to the allegation in the amended petition, the trial transcript establishes Petitioner's daughter described five separate rapes. The State's proof established that Petitioner penetrated the victim's vagina with his tongue, penetrated her anus with his penis, and penetrated her mouth with his penis while the family was living on Louis Street. The child's trial testimony also establish that he penetrated her vagina with his tongue and penetrated her anus with his penis while the family was living in the Music City Motor Inn. Addendum No. 1, Trial Transcript, pp. 82-86. The jury determined the credibility of the witnesses, including the victim. As to the victims's sexual condition, this fact was discussed at Petitioner's trial. (Docket Entry No. 14, Addendum No. 1, Trial Transcript, at pp. 82-86). These facts preclude relief on this claim as well as Petitioner's claim of actual innocence so as to excuse his procedural defaults.

17

support the federal claim were before the state courts or that a somewhat similar state-law claim was made." "[A] federal habeas petitioner ... [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim.") A claim supported only by citation to state law is insufficient to present a federal claim, even if the cited state decision restated an analysis of federal law. Harless, 459 U.S. at 7-8 n.3. The state courts must be provided with a "fair opportunity" to apply controlling legal principles to the facts bearing upon the petitioner's constitutional claim. Id. at 6.

"[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998). As a matter of federal law, to avoid procedural default, federal law requires a federal habeas petitioner in Tennessee to present his federal claims to the Tennessee Court of Criminal Appeals. Covington v Mills, 110 Fed. Appx. 663, 666 (6th Cir. 2004).

The "Procedural Default Doctrine" bars consideration of a federal claim in a habeas action that was not presented to the state court or was decided on state law grounds.

> [t]his Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. This rule applies whether the state law ground is substantive or procedural. In the context of direct review of a state court judgment, the independent and adequate state ground doctrine is jurisdictional. Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would, therefore, be advisory. . .
>
> ***
>
> . . . the doctrine applies also to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on an

18

independent and adequate state procedural ground.

Coleman v. Thompson, 501 U.S. 722, 729-30 (1992) (emphasis added and citations omitted).

Yet, a presumption of no procedural default arises if the state court decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of [the] state law ground is not clear from the face of the opinion." Id. at 735. Further, this doctrine applies only to "firmly established" and regularly followed state procedural rules. Ford v. Georgia, 498 U.S. 411, 423-24 (1991). Here, Respondent cites Tenn. Code Ann. § 40-30-102 (a) and (c) that has a one year limitation period that has long since passed for presenting any of this claim and State precedent on appellate waiver.

The standard analysis for procedural default was set forth by the Sixth Circuit in the oft-cited Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986):

> When a state argues that a habeas claim is precluded by the petitioner's failure to observe a state procedural rule, the federal court must go through a complicated analysis. First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> ***
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction.
>
> ***
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.... This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims.

Maupin, 785 F.2d at 138 (citations omitted).

19

### Noncompliance with Applicable State Rules

Any reliance on a state rule must be express, *i.e.*, supported by citation to a state law or court rule as well as a showing of how the facts of the case violate that rule. Walker v. Engle, 703 F.2d 959, 966 (6th Cir. 1983). Respondent cites Tennessee's statute of limitations as barring these defaulted claims. Tenn. Code Ann. § 40-30-102(a) and (c). As to Petitioner's new claims in this action, if there is no state court determination of whether a petitioner's claims are procedurally defaulted under state law, then the Court is to consider whether the state court would bar the claims if presented to them. Engle v. Isaac, 456 U.S. 107, 125-26 n.28 (1982). As discussed infra, the Court concludes that the Tennessee courts would conclude that these claims are time barred.

### "Firmly Established" and "Regularly Followed" State Rules

To qualify for the procedural default rule, the cited state law also must be a firmly established and regularly followed state practice. Ford, 498 U.S. at 423-24. In Hutchison v. Bell, 303 F.3d 720 (6th Cir. 2002), the Sixth Circuit analyzed Tennessee's statute of limitations statute on post-conviction petitions and its Burford exception in a procedural default analysis:

> Hutchison argues that Tennessee courts' willingness to excuse procedural default pursuant to Burford demonstrates that state procedural rules are not regularly followed in the context of later-arising claims.
>
> Nevertheless, we agree that Tennessee's due process exception does not render this provision inadequate. Tennessee's due process exception does not grant unfettered discretion to state courts in applying procedural default rules. Although Tennessee courts will often permit the hearing of an untimely claim, the decision is confined by the due process standards delineated in Burford and its progeny. The Tennessee courts consistently enforce a procedural scheme that encompasses both the one-year limitations period and a court-recognized procedure for tolling that statute when specific due process grounds are presented....

20

In Hannah v. Conley, 49 F.3d 1193 (6th Cir. 1995) (per curiam), this Court found that the then-applicable three-year statute of limitations for post-conviction petitions in Tennessee was regularly applied and would bar presentation of an unexhausted claim. Id. at 1197. The Hannah court noted that the language of the statute was mandatory in that it provided that a claimant "must" petition within three years or his claim "shall" be barred. Id. at 1196. The current one-year statute of limitations contains the same mandatory language. See T.C.A. § 40-30-202(a).

Although the previous cases did not present a Burford type later arising claim, we do not find that the state's Burford tolling rules command a different result. . . .

Given that tolling under Burford is not discretionary and given this Circuit's reluctance to discourage state courts from exhibiting caution before applying procedural default rules in capital cases, we conclude that the Burford exception does not render Tennessee's procedural rules inadequate.

Id. at 738-739. (footnotes omitted).

The Sixth Circuit also ruled in Hutchinson that despite the Burford exception to the Tennessee timeliness rule, Burford was not a separate constitutional claim. Id. at 740-41. In a word, Hutchinson found the Tennessee limitations rule to constitute a firmly established and regularly followed state law. Thus, the Court concludes that Tennessee's limitations statute is an independent and regularly enforced state rule.

### Adequacy of the State Rule

The Supreme Court recognized the following state interests as constituting adequate grounds for state procedural rules.

The possible avoidance of an unnecessary trial or of a retrial, the difficulties of making factual determinations concerning grand juries long after the indictment has been handed down and the grand jury disbanded, and the potential disruption to the numerous convictions of finding a defect in a grand jury only after the jury has handed down indictments in many cases.

Coleman, 501 U.S. at 745-46.

21

Another reason to support a finding of adequate state rules was decided in <u>Frances v.</u> <u>Henderson</u>, 425 U.S. 536 (1976), where the Supreme Court enforced a state rule that promoted finality, noting a comparable federal rule.

> Plainly the interest in finality is the same with regard to both federal and state prisoners. ... There is no reason to ... give greater preclusive effects to procedural default by federal defendants than to similar defaults by state defendants. To hold otherwise would reflect an anomalous and erroneous view of federal-state relations.

425 U.S. at 541-42.

Procedural rules such as statutes of limitations have been found to be independent and adequate. In <u>Coleman</u>, the Supreme Court upheld a procedural rule that bars consideration of a federal claim for failure to meet state law requirements for timely appeals. 501 U.S. at 750-51. In <u>Brown v. Allen</u>, 344 U.S. 443, 485-86 (1953), the Court also applied the procedural default rule to a state rule that placed time limits on appellate rights. <u>Accord</u> <u>Reed v. Farley</u>, 512 U.S. 1277 (1994) (denying writ due to waiver of delay under the Interstate Agreement on Detainers by failure to object at trial and to establish prejudice). Moreover, State rules that failure to object at trial to preserve a claim are also adequate State rules. <u>Wainwright v. Sykes</u>, 433 U.S. 72, 86-87, 91 (1977).

The Court concludes that Tennessee's cited rules are adequate for procedural default purposes and are regularly enforced.

### Cause and Prejudice

Given these procedural defaults, Petitioner must establish cause and prejudice to excuse such non-compliance. The "cause" for the default must be external to the petitioner and must otherwise be attributable to the state.

22

> . . . we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, see Reed v. Ross, 468 U.S., at 16, or that `some interference by officials,' Brown v. Allen, 344 U.S. 443, 486 (1953), made compliance impracticable, would constitute cause under this standard.

Carrier, 477 U.S. at 488 (emphasis added).

An often cited factor to establish cause for a procedural default is the petitioner's state counsel's failure to raise an issue or to comply with a state law to present a given habeas claim. Inadequate counsel can prove cause, but only if counsel's conduct violates Sixth Amendment standards and counsel's inadequate conduct has been presented to the state courts. The Supreme Court emphasized in Coleman that mere attorney error cannot be cause and cannot be attributable to the state.

> Attorney ignorance or inadvertence is not `cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must `bear the risk of attorney error.' ... Attorney error that constitutes ineffective assistance of counsel is cause, however ... as Carrier explains, `if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the state.' [quoting Carrier, 477 U.S. at 488]. In other words, it is not the gravity of the attorney's error that matters, but that it constitutes a violation of petitioner's right to counsel, so that the error must be seen as an external factor, i.e., `imputed to the state.'

Coleman, 501 U.S. at 753-54 (emphasis added).

As noted earlier, the standard for cause attributable to counsel is the constitutional standard under the Sixth Amendment for attorney performance, i.e., whether counsel provided "reasonably effective assistance," Carrier, 466 U.S. at 687, and counsel's performance must be

23

both inadequate and prejudicial to the defense. To the extent, state post-conviction counsel's omissions caused claims not to be presented, such omissions cannot establish cause. <u>Coleman</u>, 501 U.S. at 756-57. Yet, "an ineffective assistance of counsel claim can itself be procedurally defaulted, [but] the procedural default may be excused 'if the prisoner can satisfy the cause-and-prejudice standard with respect to that claim.'" <u>Deitz v. Money</u>, 391 F.3d 804, 809 (6th Cir. 2004) (quoting <u>Edwards v. Carpenter</u>, 529 U.S. 446, 452 (2000)).

For the reasons stated on Petitioner's exhausted ineffective assistance of counsel claims, the Court concludes that Petitioner has not demonstrated cause for his trial counsel's failures to present these defaulted claims to the State courts. This same rationale leads the Court to conclude that Petitioner has not established prejudice for those defaults.

As to the unexhausted claims of ineffective assistance of counsel, the evidence in this action does not establish any ineffectiveness of trial counsel. Ryan, Petitioner's trial counsel, conducted a reasonable investigation of Nelson as the perpetrator, but did not find any factual basis for this contention of Petitioner. Neither the victim's mother nor Petitioner's girl friend is identified as providing any assistance to Petitioner's defense, and their testimony if called as witnesses would not have been helpful to Petitioner. Beasley's testimony establishes that trial counsel's failure to test Petitioner for trichomonas would not have yielded any evidence. As Petitioner's trial counsel testified and the State record reflects, the victim's sexual disease was known at trial and the State never introduced any proof of Petitioner as having this condition. The Court concludes that Petitioner cannot establish cause or prejudice from these unexhausted ineffective assistance of counsel claims.

For these collective reasons, the Court concludes that the petition for the writ of habeas

24

corpus should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the _1st_ day of ~~February~~ March, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge